OPINION. LeMike, Jvdge: The only issue for our determination here is whether the gain on the sale of 900 shares of Wisconsin stock in 1945 was ordinary income or a capital gain. It was a capital gain if the shares were capital assets within the meaning of section 117 (a) (1), Internal Revenue Code.[1] The evidence convinces us that the petitioner acquired and held the shares in question as a long term investment, rather than for trade in the regular course of its business. It follows, and we have found as a fact, that the shares constituted capital assets. The facts here are in many respects identical with, and are on the whole indistinguishable from, those in E. Everett Van Tuyl, 12 T. C. 900. We held on the facts in that case that the profit derived from the sale of securities was a capital gain. We said in our opinion: It is established that a taxpayer may be a dealer as to some securities and he may also hold similar or other securities on his own account for purposes other than for resale to customers. As to the latter, he is not a dealer, he is not entitled to compute income on the inventory method, and securities so purchased are properly recognizable as capital assets within the meaning of section 117 (a) (1). Schafer v. Helvering, 299 U. S. 171; Vaughan v. Commissioner (CCA-2), 85 Fed. (2d) 497; certiorari denied, 299 U. S. 606; Hammitt v. Commissioner (CCA-3), 79 Fed. (2d) 494; Francis Shelton Farr, 44 B. T. A. 683; R. O. Holton & Co., 44 B. T. A. 202; and I. T. 3891, C. B. 1948-1, p. 69, which reads as follows: Where securities are acquired and held by a dealer in securities solely for investment purposes, such securities will be recognized as capital assets, as defined in section 117 (a) (1) of the Internal Revenue Code, even though such securities are of the same type or of a similar nature as those ordinarily sold to the dealer’s customers. The respondent argues here that the evidence shows that the entire lot of 1,000 shares of the Wisconsin stock was acquired and continuously held by the petitioner as stock in trade. We can not reach this conclusion without treating the testimony of both of petitioner’s witnesses, its president and vice president and treasurer, as well as the bookkeeping entries which were made by petitioner’s offices, and, in fact, the petitioner’s whole claim in this proceeding, as a “belated fabrication,” as suggested by the respondent in his brief. There is nothing in the evidence before us that would justify this course. In the absence of contradictory evidence, we have no reason to discredit the testimony of petitioner’s president that the Wisconsin shares were purchased for investment purposes rather than as stock in trade for sale to customers in the regular course of business; especially since the whole history of the transaction corroborates this testimony. The action taken by the petitioner’s directors on January 3, 1945, shows unmistakably that the petitioner’s officers regarded the 900 shares of Wisconsin stock as an investment. The corporate resolution was for the purpose of correcting the book entries to so show. Physical segregation of the certificates for these shares was not practical because they were then being held by the bank, along with petitioner’s other securities, as collateral for a loan. They were segregated in the petitioner’s books, however, and were never offered for sale to petitioner’s customers. The respondent argues that, since the petitioner regularly used inventories in making its returns for 1944 and prior years and did not obtain or ask for permission from the Commissioner to change this method, it was required to inventory all of its securities on hand, including the Wisconsin shares, at the close of the taxable year 1944. That would, of course, be true as to all securities which the petitioner held for sale to customers. However, the shares in question, being investment shares, were never properly included in inventory and were correctly taken out of inventory by the entry made January 3, 1945. See R. O. Holton & Co., 44 B. T. A. 202; Vaughan v. Commissioner, 85 Fed. (2d) 497; Hammitt v. Commissioner, 79 Fed. (2d) 494. The respondent calls attention to the fact that in its petition in this proceeding the petitioner alleges that the 900 shares of Wisconsin stock were purchased “for resale to customers in the ordinary course of its trade or business.” It is noted, however, that the respondent in his answer denied this allegation. In an amendment to the petition filed at the hearing it is alleged that the 900 shares were held “solely for investment.” We think that the evidence supports that allegation. Reviewed by the Court. Decision will be entered under Rule 50. Disney and OppeR, JJ., dissent. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. — As used In this chapter— (1) Capital assets. — The term “capital assets” means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the Inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * *.